UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SEAN M. WEBB, | ) | CASE NO. 1:24-CV-01807 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF ELYRIA, *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

Before the Court is the Motion for Summary Judgment (Doc. 12) filed by Defendants City of Elyria, Chief William Pelko, Officer Matthew Perkins, Officer Jordan Eggleton, Officer Benjamin Harris, and Officer Lee Frank (collectively "Defendants"). *Pro se* plaintiff Sean Webb ("Webb" or "Plaintiff") did not respond in opposition. For the reasons stated herein, Defendants' Motion for Summary Judgment is GRANTED.

**I.      BACKGROUND**

    **A.      Undisputed Facts**

On October 16, 2023, Webb filed a missing person report for his minor daughter, BMW. (Doc. 11, Webb. Depo. Tr., at 121.)[1] Webb learned BMW was at her maternal grandmother's house. (*Id.* at 123.) On October 17, 2023, Webb requested Elyria police officers assist him at BMW's grandmother's house because he anticipated a custody dispute. (Doc. 1, Compl., at 4.)

Elyria Police Officers Matthew Perkins ("Perkins") and Jordan Eggleton ("Eggleton") arrived on scene before Webb. (*Id.*) The incident was captured by Perkins' and Eggleton's body

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

cameras. (Doc. 10, Ex. A and Ex. C, Perkins' Body Camera[2]; Ex. B., Eggleton's Body Camera.) Webb arrived around 9:49 a.m. (Ex. A at 28:08; Ex. B at 24:28.)[3] Perkins and Eggleton met Webb at his vehicle. (Ex. A at 28:16; Ex. B at 24:36.) The officers asked Webb for his custody paperwork. (Ex. A at 28:17.) Webb presented Perkins with a journal entry on his phone that was part of a larger "living document" that was around 40 pages. (Doc. 11 at 110-11.) After a brief discussion with the officers, Webb stated, "I am going to physically go remove her from this property . . . I promise you I am." (Doc. 10, Ex. A at 30:45.) Perkins told Webb he would not allow Webb to go into the house to remove BMW. (Ex. A at 31:01; Ex. B at 27:15.) Webb then began moving toward the house. (Ex. A at 31:03; Ex. B at 27:29.)

Perkins held Webb's wrist for approximately 30 seconds and his upper arm for less than four seconds. (Ex. A at 31:04; Ex. B at 27:30.) Perkins explained Webb could not enter the house. (*Id.*) Webb did not show signs of physical discomfort. (*Id.*) The restraint ended immediately once Webb stopped advancing. (Ex. A at 31:36; Ex. B at 28:02.) Perkins offered to call his supervisor. (Ex. A at 31:44.) While Perkins was speaking with his supervisor, Eggleton remained with Webb. (Ex. B at 28:14.) Eggleton told Webb he was free to leave, but they needed to clarify the custody situation before allowing him to take BMW with him. (*Id.* at 29:34.)

After Perkins consulted with his supervisor, Webb was authorized to take custody of his daughter. (*Id.* at 30:49.) This authorization was given around 9:55 a.m., approximately six minutes after Webb's arrival. (*Id.*) BMW and her grandmother were sitting on the front porch.

---

[2] Perkins' body camera footage is split into two video files. (*See* Doc. 10, Ex. A and Ex. C.)

[3] Although the incident began when Webb arrived around 9:49 a.m., all references to the body camera footage will be to the video timestamps.

(Ex. A at 34:31.)  Perkins instructed BMW she would be leaving with her father and to get her belongings.  (*Id.* at 34:41-36:36.)  BMW was visibly upset and went inside the house.  (*Id.*)  Over the next several minutes, the officers continued to instruct BMW and her grandmother that she needed to leave with Webb.  (*Id.* at 42:57-46:40.)  The officers told BMW's grandmother they would not wait for BMW's mother to arrive, that her time was up, and told her grandmother to drag BMW out of the house if she had to.  (*Id.*)  Around 10:09 a.m., approximately twenty minutes after Webb's arrival on scene, BMW got into Webb's vehicle.  (Ex. A at 47:20; Ex. B at 43:52.)

At his deposition, Webb explained his history of frequent interactions with the Elyria police related to BMW's custody.  (Doc. 11 at 108-109, 125-26.)  When asked about his alleged injuries from the October 17, 2023 incident, Webb admitted the pain from Perkins' restraint was "minuscule."  (*Id.* at 154.)  He required no medical treatment and could not recall whether he felt pain beyond that day.  (*Id.* at 152.)  Webb sought no mental health treatment following the incident.  (*Id.* at 193.)  Although Webb believed the police reports contained false information, Webb could not identify any specific falsified statements.  (*Id.* at 158-59.)

### B.  Procedural Background

On October 17, 2024, Webb filed this action against the City of Elyria, Chief Pelko, and Officers Perkins, Eggleton, Harris, and Lee.  (Doc. 1.)  He alleged thirteen causes of action: (1) Violation of Fourth and Fourteenth Amendments, Unlawful Detention; (2) Violation of Fourteenth Amendment, Unlawful Detention; (3) Violation of Ohio Constitution Article I, Section 1, False Arrest & Detention; (4) Violation of Fourteenth Amendment, Equal Protection; (5) Violation of 42 U.S.C. § 1983, Civil Rights Conspiracy; (6) Violation of 42 U.S.C. § 1985(3), Civil Rights Conspiracy; (7) Violation of 42 U.S.C. § 1983, Municipal Liability; (8) Supervisory Liability; (9) Violation of Fourth and Fourteenth Amendments, Excessive Force;

(10) Violation of Ohio Constitution Article I, Section 2, Equal Protection; (11) Intentional Infliction of Emotional Distress; (12) Assault; and (13) Abuse of Process.  (*Id.* at 8-15.)

On November 17, 2025, Defendants timely moved for summary judgment on all causes of action.  (Doc. 12.)  The motion is unopposed.

## II. LAW AND ANALYSIS

### A. Standard of Review

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  FED. R. CIV. P. 56(a).  "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  The moving party bears the burden of showing that no genuine issues of material fact exist."  *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021) (citations and quotations omitted).  A "material" fact is one that "might affect the outcome of the suit under the governing law[.]"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  "[A] genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Abu-Joudeh v. Schneider*, 954 F.3d 842, 849 (6th Cir. 2020) (citations and quotations omitted).

"Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact."  *Queen v. City of Bowling Green, Ky.*, 956 F.3d 893, 898 (6th Cir. 2020) (citations and quotations omitted).  The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co., Inc.*, 395 F.3d 338, 342 (6th Cir. 2005) (citation omitted).  A party asserting or disputing a fact must cite evidence in the record or show the record establishes either the absence or the presence of a genuine dispute.

*See* FED. R. CIV. P. 56(c), (e). Rule 56 further provides "[t]he court need consider only" the materials cited in the parties' briefs. FED. R. CIV. P. 56(c)(3); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.") (citations omitted).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (citations and quotations omitted). The Court's role is not to make credibility determinations or "weigh" conflicting evidence. *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014). "The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Id.*

"Even where a motion for summary judgment is unopposed, a district court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014); *see also Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). But there is no obligation for the trial court to scour the record in search of genuine disputes of material fact. *See Guarino*, 980 F.2d at 404. To do so would be "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406. Accordingly, the Court "may rely on the moving party's unrebutted recitation of the evidence in reaching a conclusion that facts are uncontroverted and that there is no genuine issue of material fact." *Jones v. Kimberly-Clark Corp.*, 238 F.3d 421, 2000 WL

1800475, at *3, 2000 U.S. App. LEXIS 36183 (6th Cir. 2000) (Table) (citing *Guarino*, 980 F.2d at 410).

Although *pro se* complaints are held to a less stringent standard than complaints drafted by lawyers, the lenient treatment has limits and a *pro se* plaintiff must still present a genuine issue of material fact to survive a motion for summary judgment. *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); FED. R. CIV. P. 56(c).

B.  **Federal Claims**

Plaintiff alleged he is entitled to relief against Defendants under 42 U.S.C. § 1983. (Doc. 1 at 8-15.) "To state a claim under § 1983, a plaintiff must set forth facts that, when favorably construed, establish: (1) the deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under the color of state law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). There is no dispute the individual defendants were acting under color of state law.

1.  **Fourth Amendment Claims**

a)  **Unlawful Detention**

To state a Fourth Amendment unlawful detention claim, Webb must demonstrate he was seized without reasonable suspicion or probable cause. *U.S. v. Mendenhall*, 446 U.S. 544, 553, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980); *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). A seizure occurs only when physical force or a show of authority restrains a person's freedom of movement such that a reasonable person would not feel free to leave. *Mendenhall*, 446 U.S. at 553.

Here, when Webb stated he would "physically go remove" his daughter and moved toward the house, Perkins responded by holding Webb's wrist for approximately 30 seconds and

his upper arm for less than four seconds. (Doc. 10, Ex. A at 30:45-31:16.) The restraint ended immediately once Webb stopped advancing. (*Id.* at 31:36.) Webb was told the officers needed to confirm his custody arrangement before they could allow him to leave with his daughter. (Ex. B at 29:34.)

Defendants assert the brief restriction of Webb's movement does not constitute a seizure under the Fourth Amendment. (Doc. 12 at 268-69.) And, even if Webb was briefly seized, the officers were justified given the volatile custody situation. (*Id.* at 269.)

That the officers' brief restraint was permissible is clearly established. In *Hoover v. Walsh*, 682 F.3d 481 (6th Cir. 2012), a 36-minute investigatory detention of a motorist suspected of parental kidnapping was upheld as reasonable under the Fourth Amendment where officers acted promptly and detained the motorist only as necessary to confirm custody arrangements. Similarly, in *Krantz v. City of Toledo Police Dep't*, 197 F. App'x 446 (6th Cir. 2006), a 25-minute detention was justified by reasonable suspicion where officers needed to confirm custody arrangements before releasing a child. Here, the physical restraint lasted approximately 30 seconds so officers could deescalate the situation and stop Webb from unlawfully entering the grandmother's home. Webb chose to remain on scene while officers confirmed Webb's custody arrangement. He was authorized to leave with his daughter within six minutes. Defendants have met their evidentiary burden of establishing the officers' actions were reasonable under the circumstances. *See Williams*, 9 F.4th at 430; *Hoover*, 682 F.3d at 497-98. The unlawful detention claim is dismissed as a matter of law.

### b) Excessive Force

To state an excessive force claim, under the Fourth Amendment "objective reasonableness" standard, courts balance "the nature and quality of the intrusion on the

individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (citations and quotations omitted). The officers' actions must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

Defendants assert Perkins' actions were reasonable, necessary, and proportionate. (Doc. 12 at 272.) Perkins held Webb's wrist for approximately 30 seconds and his upper harm for less than four seconds. Restraint occurred only after Webb declared he would physically remove his daughter and began moving toward the house. (Doc. 10, Ex. A at 30:45-31:16.) The restraint ended once Webb stopped advancing. (*Id.* at 31:36.) This limited and brief use of force was objectively reasonable to prevent a potentially volatile situation and unlawful entry. *See Graham*, 490 U.S. at 396-97. Webb's excessive force claim is dismissed as a matter of law.

2. **Fourteenth Amendment Claims**

a) **Unlawful Detention**

Webb brings a Fourteenth Amendment "unlawful detention" claim based on the officers' alleged infringement of his parental rights. (Doc. 1 at 9.) The Court will construe this claim as substantive due process claim.

Substantive due process protects individuals from any arbitrary deprivation of their liberty interests by government action. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-49, 119 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998). The Court first considers "whether the plaintiff has shown a deprivation of a constitutionally protected liberty interest," and then considers "whether the government's discretionary conduct that deprived that interest was constitutionally repugnant." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 765-66 (6th Cir. 2020) (citations and quotations omitted). Courts have recognized the substantive due process rights of parents are implicated when the government attempts to interfere with the custody of their children. *See*

*Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). To establish a violation of Webb's substantive due process rights, Webb must demonstrate the defendants abused their official power in a manner that shocked the conscience. *Cnty. of Sacramento*, 523 U.S. at 846; *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir. 1993).

To Defendants, Webb's substantive due process claim for unlawful detention fails because it is properly analyzed under the Fourth Amendment. (Doc. 12 at 270.) Where "the Fourth Amended provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham*, 490 U.S. at 395. Even if Webb could maintain his Fourteenth Amendment claim, Defendants assert he cannot establish the officers' conduct "shocks the conscience." (Doc. 12 at 270.)

The officers briefly restricted Webb's movement for about 30 seconds to prevent the situation from escalating and, notably, to prevent him from unlawfully entering the home. They took only six minutes to confirm his custody arrangement before Webb was allowed to leave with his daughter. And even then, officers stayed to ensure the grandmother did not interfere and the daughter left with Webb. As explained above, the officers' conduct did not amount to a Fourth Amendment violation. *See Hoover*, 682 F.3d at 497-98; *Krantz*, 197 F. App'x at 452-53. It also did not amount to a Fourteenth Amendment violation. *See Cnty. of Sacramento*, 523 U.S. at 846-47. Webb's substantive due process claim is dismissed as a matter of law.

### b) Equal Protection

To state an equal protection claim, Webb must prove he was treated differently from similarly situated individuals based on membership in a protected class. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). He must

demonstrate he was intentionally treated differently from others similarly situated and that there was no rational basis for the difference in treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000).

Defendants again assert the officers' conduct here was related to their legitimate interest in ensuring safety during a custody transfer that Webb himself anticipated would be contentious. (Doc. 12 at 271.) They also correctly argue the lack of evidence Webb was treated differently from similarly situated defendants, let alone that any alleged disparate treatment was due to his membership in a protected class. (*Id.* at 270.) Webb did not respond in opposition and therefore failed to present such evidence in support of his equal protection claim. Having put forth no evidence to establish a genuine issue of fact, Webb's equal protection claim is summarily dismissed.

### 3. Civil Rights Conspiracy Claims

#### a) § 1983 Civil Conspiracy

A civil conspiracy claim under § 1983 "requires (1) a single plan existed, (2) that defendants shared in a general conspiratorial objective to deprive plaintiffs of their constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused injury to plaintiffs." *Siefert*, 951 F.3d at 767-68 (citations and quotations omitted). "[A] claim for civil conspiracy under § 1983 exists only where the plaintiff has established a separate and actionable constitutional injury." *Rapp v. Dutcher*, 557 F. App'x 444, 450 (6th Cir. 2014). Webb's civil conspiracy claim rests entirely on the viability of his other constitutional claims. As explained above, those claims are not viable. Webb's civil § 1983 conspiracy claim is summarily dismissed.

> **b)** **§ 1985(3) Civil Conspiracy**

A § 1985(3) civil conspiracy claim requires a plaintiff to show "(1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) (quoting *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)). The plaintiff must demonstrate that the conspiracy was motivated by a class-based animus, such as race. *Johnson*, 40 F.3d at 839.

For the same reasons Webb's claims asserting deprivations of constitutional rights are summarily dismissed, so too is his § 1985(3) claim. Moreover, he has presented no evidence to support an unlawful conspiracy designed to deprive him of a constitutional right.

> **4.** ***Monell* Claims**
>
> **a)** **Municipal Liability**

Webb brings a § 1983 claim against the City of Elyria pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). (Doc. 27 at 380-81.) For a municipal entity to be subject to liability under *Monell*, the Court considers whether Webb's harm was caused by a constitutional violation, and if so, whether the municipal entity is responsible for that violation. *See Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 449 (6th Cir. 2011) (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992)). "However, '[t]here can be no liability under *Monell* without an underlying constitutional violation.'" *Chambers v. Sanders*, 63 F.4th 1092, 1101-02 (6th Cir. 2023) (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986).

With no underlying constitutional violation on which to predicate a *Monell* claim, this claim is dismissed as a matter of law.

### b) Supervisory Liability

Webb brings a supervisory liability claim against Elyria Police Chief William Pelko as well as Officers Benjaman Harris and Lee Frank, two supervising officers of the Elyria Police Department.  (Doc. 1 at 2-3, 13.)

Government officials may not be held liable under § 1983 for unconstitutional conduct of their subordinates under a theory of *respondeat superior*.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  Webb has not provided evidence that Chief Pelko or Officers Harris or Frank were directly involved in the incident between Webb, Perkins, and Eggleton.  Although Webb referenced "[t]he supervisor's instructions to release the child," it is not clear from the body camera footage who Perkins called from the scene.  (*See* Doc. 1 at 13; Doc. 10, Ex. A and Ex. B.)  Even if Perkins spoke with one of these supervisors, the fact that the supervisor instructed Webb's custody status be confirmed is insufficient to establish a constitutional violation.  To the extent Webb alleged Chief Pelko or Officers Harris or Frank falsified reports to protect their officers, Webb admitted he could not identify any specific falsified statements.  (Doc. 11 at 158-59.)  And as discussed above, Webb has not met his burden of showing Perkins or Eggleton violated his constitutional rights.  The supervisory liability claim fails.

C.  **State Law Claims**[4]

1.  **False Arrest/Detention and Equal Protection**

Webb stated a claim for false arrest and detention as well as an equal protection claim under the Ohio Constitution.  There is no private right of action for violations of the Ohio Constitution.  *See Provens v. Stark Cnty. Bd. of Mental Retardation & Developmental Disabilities*, 594 N.E.2d 959 (1992); *Schwarz v. Bd. of Trs. of Ohio State Univ.*, 510 N.E.2d 808 (1987).  Even if such claims existed, they would fail for the same reasons as Webb's federal claims discussed above.  These claims are summarily dismissed.

2.  **Intentional Infliction of Emotional Distress**

To state a claim for intentional infliction of emotional distress, Webb must prove: "(1) the defendant intended to cause, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure."  *Bentkowski v. Trafis*, 56 N.E.3d 230, 241-42 (2015).

Here, Defendants urge the officers' conduct falls short of the "extreme and outrageous" standard.  (Doc. 12 at 277.)  In support, they direct the Court to the video footage of the officers' minimal contact with Webb.  (*Id.*)  Again, in failing to respond, Webb has presented no evidence from which the Court can conclude there is a triable issue.  The videos establish the officers'

---

[4] The Court has evaluated its exercise of supplemental jurisdiction in accordance with 28 U.S.C. § 1367 and has determined resolving the state claims in this action is prudent and consistent with judicial economy, convenience, fairness, and comity.  *See Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010).

conduct was necessary and reasonable under the circumstances.  There is nothing before the Court to suggest any officer's conduct was "so extreme and outrageous that it went well beyond all possible bounds of decency." *Bentkowski*, 56 N.E.3d at 241.  Webb's intentional infliction of emotional distress claim is summarily dismissed.

### 3. Assault

To state an assault claim, Webb must prove the defendant intended to place him in apprehension of a "harmful or offensive contact." *Smith v. John Deere Co.*, 614 N.E.2d 1148, 1154 (Ohio Ct. App. 1993).  When Webb declared his desire to physically remove his daughter from her grandmother's property, Perkins told Webb he could not go into the house.  (Doc. 10, Ex. A at 30:45, 31:01; Ex. B at 27:15.)  When Webb began moving toward the house, Perkins held Webb's wrist for approximately 30 seconds and Webb's upper arm for less than four seconds.  (Ex. A at 31:04; Ex. B at 27:30.)  The restraint ended immediately once Webb stopped moving to unlawfully enter the residence.  (Ex. A at 31:36.)  Webb has not put forth evidence Perkins intended to place him in fear of a "harmful or offensive" contact.  *See Gerber v. Veltri*, 203 F. Supp. 3d 846, 853-54 (N.D. Ohio 2016) (no liability for assault under Ohio law in absence of any evidence defendant intended plaintiff to fear anything).  Accordingly, Webb's assault claim is summarily dismissed.

### 4. Abuse of Process

For an abuse of process claim, Webb must show "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 626 N.E.2d 115, 116 (1994).

The Court is unaware of any legal process initiated by Defendants, and Webb has presented none. Webb's abuse of process claim is summarily dismissed.

### D.      Governmental Immunity

#### 1.      Federal Qualified Immunity

"The doctrine of qualified immunity provides that 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 738 (6th Cir. 2022) (quoting *Williams*, 9 F.4th at 430).

Once asserted by a defendant, a "[p]laintiff bears the burden of showing that defendants are not entitled to qualified immunity." *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018) (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)). The plaintiff must demonstrate both the challenged conduct violated a constitutional right and the right was clearly established. *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014). "If the plaintiff fails to establish either element, the defendant is immune from suit." *Id.*; *see also Barber v. Miller*, 809 F.3d 840, 844 (6th Cir. 2015). "Between these two considerations, [the Court] may take them in either order. *Hall v. Navarre*, 118 F.4th 749, 759 (6th Cir. 2024) (citing *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)).

Individual defendants Chief Pelko and Officers Perkins, Eggleton, Harris, and Frank have asserted qualified immunity. Once asserted, the burden of demonstrating such immunity is unwarranted shifted to Webb. He has not responded and has therefore failed to meet his burden. For the reasons stated in Defendants' briefing and based on the evidence submitted in support, Chief Pelko and Officers Perkins, Eggleton, Harris, and Frank are entitled to qualified immunity.

### 2. State Statutory Immunity

"When federal qualified immunity and Ohio statutory immunity under § 2744.03(A)(6) rest on the same questions of material fact, [a court] may review the state-law immunity defense 'through the lens of the federal qualified immunity analysis.'" *Hopper v. Phil Plummer*, 887 F.3d 744, 759 (6th Cir. 2018) (quoting *Chappell*, 585 F.3d at 907 n.1). As discussed herein, the individual defendants did not violate a constitutional right and are entitled to qualified immunity. And Webb presented no evidence the officers acted with malicious purpose, bad faith, or in a wanton or reckless manner. Accordingly, Chief Pelko and Officers Perkins, Eggleton, Harris, and Frank are entitled to Ohio statutory immunity against Webb's state law claims.

Additionally, as Defendants correctly point out, the City of Elyria is a political subdivision that is immune from liability regarding the exercise of a governmental function. *See* Ohio Rev. Code. § 2744.02(A)(1). Police services are governmental functions. *See* Ohio Rev. Code. § 2744.01(C)(2)(a). And no exceptions under § 2744.02(B) apply to overcome immunity. Accordingly, the City of Elyria is entitled to Ohio statutory immunity against Webb's state law claims.

### III. CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment (Doc. 12) is GRANTED in its entirety.

**IT IS SO ORDERED.**

**Date:** January 16, 2026

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE